IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **CORNERSTONE MISSIONARY BAPTIST CHURCH,**<br><br>    Plaintiff,<br><br>v.<br><br>**SOUTHERN MUTUAL CHURCH INSURANCE COMPANY**,<br><br>    Defendant. | Civil Action No. 5:12-CV-149 (HL) |

**ORDER**

Before the Court are Defendant Southern Mutual Church Insurance Company's <u>Daubert</u> Motion to Exclude the Testimony of Greg Barfield (Doc. 15), <u>Daubert</u> Motion to Exclude the Testimony of Garry Kornegay (Doc. 16), Motion to Strike (Doc. 32), and Motion for Leave to File Sur-reply (Doc. 45). Also before the Court is Plaintiff's Motion for Leave to File (Doc. 34). Following a hearing on these motions on November 20, 2013, and for the reasons stated below, Defendant's <u>Daubert</u> motion on Barfield is granted; its <u>Daubert</u> motion on Kornegay is denied in part and granted in part; its motion to strike is granted; its motion for leave to file a sur-reply is moot; and Plaintiff's motion is denied.

**I.    Factual Background**

This case arises out of an insurance claim made by Plaintiff Corner Stone Missionary Baptist Church ("Plaintiff") on its insurance policy with Defendant

Southern Mutual Church Insurance Company ("Southern Mutual") for damage sustained by the roof and truss system of Plaintiff's church building. Southern Mutual first hired Garry Kornegay ("Kornegay") to determine the cause of the damage. After inspecting the Plaintiff's church building on January 13, 2011, Kornegay reported that a windstorm had wrecked the wooden trusses supporting the building's roof. (Garrett Deposition, Doc. 17-1, pp. 26-33; Kornegay Deposition, Doc. 17-4, pp. 31, 41-43). If the damage were the result of a windstorm, then Plaintiff's claim would be covered under the Southern Mutual policy. (Southern Mutual Corporate Deposition, Doc. 29-2, p. 88).

Dissatisfied with Kornegay's findings, Southern Mutual decided to get a second opinion and hired Christian Dawkins to inspect Plaintiff's church. Dawkins discovered that one truss in the building ("truss No. 6") had been cut, and the two adjoining trusses were being supported by modified bracing. He attributed the building's damage to these modifications, which would not be covered by the insurance policy. Based on Dawkins' findings, Southern Mutual denied Plaintiff's claim. (Id. at 47, 84-94; Dawkins Deposition, Doc. 23-1, pp. 40-43).

Challenging the denial of its claim, Plaintiff sought proof in aid of its argument. Plaintiff hired Greg Barfield ("Barfield") to inspect the roof and truss system. (Johnson's letter to Southern Mutual, Ex. 4 to Southern Mutual Deposition, Doc. 29-3, pp. 28-30; Moye Deposition, Doc. 17-5, pp. 15-22, 100-

01, 119-21). He opined that the damage to the church building was not caused by the construction modifications or defects pointed out by Christian Dawkins.[1] (Barfield Deposition, Doc. 17-2, pp. 44-47, 55). Plaintiff also asked Kornegay to respond to Dawkins' opinions. Kornegay concurred with Barfield and denied that the damage he had observed in the church's attic could have been the result of construction modifications. (Doc. 17-4, pp. 56-61, 80-85).

In light of the conflicting opinions from the engineers, Southern Mutual did not finally deny Plaintiff's insurance claim until a fourth engineer confirmed Dawkins' conclusions. Plaintiff subsequently sued Southern Mutual for breach of contract and bad faith in denying the insurance claim. After Southern Mutual moved for summary judgment on Plaintiff's claims and the exclusion of Plaintiff's experts, Kornegay and Barfield, Plaintiff now seeks leave to file a supplemental expert report from Kornegay to support its response to the motions.

## II. Legal Analysis

The Court now considers Southern Mutual's motions to exclude the testimony of Greg Barfield and Garry Kornegay and strike Kornegay's supplemental report, as well as the motion seeking leave to file a sur-reply.

---

[1] Barfield provided other opinions as well, but Plaintiff only seeks to admit as expert testimony his opinion "that the damage observed is not consistent with a progression of failure from the modified trus[s], as reported by Christian Dawkins of Beech Engineering." (Plaintiff's Response to Defendant's Motion to Exclude Barfield, Doc. 22, p. 17 n. 1).

Plaintiff's belated motion for leave to file the supplemental report will also be addressed.

In diversity cases, the Federal Rules of Evidence govern the admissibility of evidence. Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005). The burden is on the Plaintiff to lay, by a preponderance of the evidence, a foundation for the admission of its experts' testimony. Corvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002) (quoting Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999)). Whether Barfield's and Kornegay's opinions may be offered as expert testimony at trial is determined by Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Under the standard articulated by the Supreme Court of the United States, this Court must act as a "gatekeeper" and test the reliability and relevancy of Barfield's and Kornegay's opinions before determining whether they can be admitted as expert testimony. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589-90, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Court must undertake a

"rigorous three-part inquiry" and decide whether: 1) Plaintiff's proposed experts are qualified to competently testify concerning the matters for which they have offered an opinion; 2) their methodology is sufficiently reliable under the Daubert standard; and 3) their testimony would assist the jury, through the application of scientific, specialized, or technical expertise, to determine a fact in issue or understand the evidence. United States v. Fazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998)).

### A. Southern Mutual's Motion to Exclude Greg Barfield

Southern Mutual provides three grounds for excluding the opinions of Barfield: 1) his opinions are based on speculation and are therefore unreliable; 2) he failed to conduct the research and tests that are necessary to support his opinions; and 3) he is not qualified to offer expert opinions on the cause of the damage to Plaintiff's building. Because the Court finds that Barfield is not qualified to offer expert testimony on the opinions he has provided in this case, it is not necessary to address Southern Mutual's first two objections.

Plaintiff's arguments for why Barfield is qualified to testify concerning the cause of the damage to the church's roof and wooden truss system fail to persuade the Court. Although Barfield received a civil engineering degree from Auburn University and is registered as a professional engineer in eleven states,

Plaintiff concentrates on his work experience in arguing for his qualifications to testify in this case. However, Barfield has little work experience with wooden structures or support systems. After graduating from Auburn, Barfield worked for sixteen years at the Georgia Department of Transportation, where he designed bridges and retaining walls that were made of concrete and metal but never examined or designed wooden buildings or trusses. (Doc. 17-2, pp. 22-24). Since 1999, Barfield has operated his own professional engineering firm. Only two percent of his work has involved wooden structures, and he has never designed a wooden truss system or a wooden truss, or the repair of a wooden truss. Prior to this case, the only time he was hired to assess the damage to a roof with wooden trusses was on a double-wide mobile home, and on that occasion he did not directly examine the trusses themselves. Furthermore, he has never been an expert witness in a lawsuit. (Id. at 8, 11-12, 17-21).

Barfield admitted in his deposition that wooden trusses have different properties than those made from other materials. He testified that "steel is more homogeneous [than wood]; you know, you count on it more" and agreed with the statement that "you can't predict with as much precision the type of load that [a wooden] member can withstand before it fails." (Id. at 85-86). Moreover, Barfield said that if he had to design a wooden truss or the repair of such a truss then he

6

would ask another engineer, Bruce Nyerges, to help because Nyerges is an expert "as far as the properties of the wood." (Id. at 25-26).

In light of these facts, the Court finds that Barfield is not qualified to testify that the damage to and failure of the wooden trusses in Plaintiff's church building could not have been caused by a progression of failure after truss No. 6 had been severed and the adjacent trusses modified. Without suggesting Barfield might not be highly qualified to provide expert testimony in other areas of civil engineering, such a finding merely recognizes that he has negligible experience with wooden trusses and how they fail, which are some of the major issues in this case. *See generally* United States v. Brown, 415 F.3d 1257, 1269 (11th Cir. 2005) (affirming the exclusion of proposed expert testimony of a witness holding a Ph.D. in plant pathology who had only worked with the chemicals at issue on "isolated" occasions); Wright v. Case Corp., No. Civ. A.1:03CV1618, 2006 WL 278384, at *3 (N.D.Ga. Feb. 1, 2006) (noting that the fact that the proposed expert "is a licensed engineer is, in and of itself, insufficient to qualify him as an expert in this case" concerning hydraulics and braking systems); Trumps v. Toastmaster, Inc., 969 F. Supp. 247, 251-52 (S.D.N.Y. 1997) (deciding a mechanical engineer was unqualified to testify as an expert in a case implicating the principles of electrical engineering); Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co., 958 F.2d 1169, 1174 (1st Cir. 1992) (ruling an engineer was not

qualified to testify concerning an alleged design defect in a crane because he had never designed, maintained, or operated cranes). Plaintiff has failed to meet its burden of establishing the relevant qualifications of its expert. *See* Frazier, 387 F.3d at 1260. Therefore, Southern Mutual's motion to exclude Barfield's testimony is granted.

### B.    Southern Mutual's Motion to Exclude Garry Kornegay

The Court reaches a different conclusion on Southern Mutual's motion to exclude the proposed expert testimony from Garry Kornegay. Plaintiff seeks to admit as expert testimony Kornegay's opinions that the failure of the church building's wooden trusses and the ultimate collapse of its roof were the result of wind events, rather than construction modifications or defects such as the severing of truss No. 6, and that storms in May and October 2008 could have caused the damage. Southern Mutual's sole argument for excluding Kornegay is that the methodology undergirding his opinion is unreliable under the standard articulated by Daubert and its progeny, but the Court is unpersuaded.

To aid trial courts in assessing the reliability of a proposed expert's methodology, Daubert sets forth several non-exclusive factors that must be considered. 509 U.S. at 595. A court must consider "(1) whether the expert's theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the

particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002) (citing Daubert, 509 U.S. at 593-94). These factors apply "not only to testimony based on scientific knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge," such as engineering. Milanowicz v. Raymond Corp., 148 F. Supp. 2d 525, 531 (D.N.J. 2001) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)). The assessment of a proposed expert's reliability must be "flexible" and case-specific, for "the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." Kumho, 526 U.S. at 141-42.

Certainly "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." Id. at 156. Experience alone—or in conjunction with skill, training, education, or other knowledge—may provide a sufficient basis for expert testimony. Fed. R. Evid. 702 advisory committee's notes. "Standards of scientific reliability, such as testability and peer review, do not apply to all forms of expert testimony." Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC, 555 F.3d 1331, 1338 (11th Cir. 2009) (rejecting the argument that a proffered expert must be excluded because his testimony was only based on experience) (citing Kumho, 526 U.S. at 151).

However, a witness who has principally relied on experience to form his opinion "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Rule 702 advisory committee's notes.

Furthermore, "unlike the fields of 'laboratory or medical testing, which employ rigorous and replicable protocols, technical fields such as engineering often involve more idiosyncratic methods of testing and design.'" McGee v. Evenflo Co., Inc., No. 5:02-CV-259-4, 2003 WL 23350439, at *4 (M.D.Ga. Dec. 11, 2003) (quoting Milanowicz, 148 F. Supp. 2d at 532); *see also* Metromont Corp. v. Sirko Assoc., Inc., Civil Action File No. 1:11-CV-2407, 2013 WL 2285576, at *3 (N.D.Ga. May 23, 2013). It would not be unusual for an engineer to provide opinions that are not derived from any specific method but are rather based solely on his knowledge and general experience after reviewing the evidence. *See* id. And "engineers routinely rely upon established principles of physics, material sciences, and industrial design and often utilize technologically sophisticated and carefully calibrated testing methods and devices when arriving at their conclusions." McGee, 2003 WL 23350439, at *5. Thus, the "accepted methodology" of engineering does not consist of guesswork or speculation but "more often involves some inquiry into industry standards, practices, or

publications and results in conclusions based upon concrete data, testing, measurements, or calculations." Id.

Applying these principles here, the Court finds Kornegay's methodology and opinions to be sufficiently reliable under the Daubert standard. After being hired by Southern Mutual to inspect Plaintiff's church building, Kornegay viewed the damage to the roof from a number of different angles when he arrived at the church. He walked around the exterior of the building and observed deflection in the roofline. He then entered the church's sanctuary and noticed places where shifting in the trusses had caused cracks to form in the sheetrock on the ceiling. He then proceeded into the attic, traversing it "all the way up and down," and examined the trusses. (Doc. 17-4, pp. 34-40). Charles Garrett, who had hired Kornegay on behalf of Southern Mutual, accompanied the engineer and took pictures of the trusses. (Id. at 37, 48). Kornegay was able to calculate the weight of the load supported by each truss by observing the materials on the top and bottom of each truss, including the shingles, roofing, sheetrock, light fixtures, etc. (Id. at 42-45). Based on his observations and calculations, he determined that the damage to Plaintiff's building was the result of a windstorm and could not have been caused by the cutting of one truss. The two trusses adjacent to the severed truss were strong enough to hold the added load. (Id. at 43, 60, 80-83).

The Court is not persuaded by Southern Mutual's contention that Kornegay's methodology did not involve testing and is therefore unreliable. Clearly he could not literally test the live and dead loads on the church's roof or the exact weight of the materials attached to the trusses given the dangerous, unstable condition of the roof at the time of his inspection. *See* Metromont, 2013 WL 2285576, at *3 (noting that "[i]n this case, physical testing of the parking deck structure was impossible. The parking deck could not be reconstructed to the position it was in prior to the collapse"). Moreover, the nature of Kornegay's methodology—observation and deduction calculated on knowledge and experience—is strikingly similar to that employed by Southern Mutual's two expert witnesses. (Doc. 23-1, pp. 24-31; Report of Tom Zgraggen, Doc. 19-12, pp. 1-6). Judging by the evidence in the record, neither of Southern Mutual's two engineers literally weighed the live and dead loads for Plaintiff's roof, and to the extent they did any other testing it did not mean Kornegay's methodology was unreliable. Although the admissibility of the opinions of Southern Mutual's expert witnesses is not at issue here, comparing their approach to Kornegay's methodology in assessing reliability is appropriate. *See, e.g.*, Clena Invs. v. XL Specialty Ins. Co., 280 F.R.D. 653, 663 (S.D.Fla. 2012) (finding the proposed expert's methodology to be reliable and observing that the opposing party's expert had "engaged in a very similar process").

The Court also rejects Southern Mutual's argument for the unreliability of Kornegay's opinion that the violent storms on Mother's Day in May 2008 could have caused the damage to Plaintiff's building. After the May 2008 storms, Kornegay personally inspected buildings in the area of Plaintiff's church that had suffered roof damage, including roofs supported by wooden trusses. Kornegay testified at his deposition that the pattern of destruction for these other roofs was similar to the damage he observed to Plaintiff's church building. (Doc. 17-4, pp. 83-85). Southern Mutual now seeks to exclude Kornegay's opinion about the May 2008 storm on the grounds that he has not provided details on the exact wind speed and storm conditions experienced by the neighboring buildings compared to Plaintiff's church or done a close comparison of the type of roof and truss systems for the buildings. Again, there is no evidence before the Court that either of Southern Mutual's engineers made such comparisons. The evidence rather suggests that Kornegay has much greater knowledge of the destructive power of the May 2008 storms through personal observation than either of the opposing experts. The Court is furthermore not convinced of the feasibility or necessity of requiring witnesses who have been offered as experts on structural engineering to provide the precise speed of the winds at the exact locations of Plaintiff's church and the other buildings in May 2008. If Southern Mutual wishes to undermine Kornegay's opinion by highlighting the lack of a more detailed

comparison then it may do so at trial through "[v]igorous cross-examination" and "the presentation of contrary evidence." Daubert, 509 U.S. at 595.

The argument for excluding Kornegay's opinion that a specific windstorm in October 2008 could have damaged Plaintiff's roof carries more weight. The Court has not been presented with any evidence that Kornegay inspected Plaintiff's church building or neighboring buildings soon after the purported October windstorm. Although Plaintiff evidently reported to Southern Mutual that on October 24, 2008 a windstorm blew some shingles off the church's roof and did considerable damage to the roof of an outlying building on the church's property, (Doc. 17-1, pp. 58-61), it now admits the evidence is unclear whether this damage was caused by a wind event in October or the Mother's Day storm in May. (Plaintiff's Response to Defendant's Motion for Summary Judgment, Doc. 28, p. 5 n. 2). Thus, since there is no specific evidence a windstorm even passed through the vicinity of Plaintiff's church in October 2008, Kornegay's opinion that such a windstorm could have destroyed the wooden trusses supporting Plaintiff's church roof is nothing more than speculation and must be excluded.[2]

In sum, Southern Mutual's motion to exclude the testimony of Garry Kornegay is granted in part and denied in part. At trial Kornegay may testify that the damage to the roof and truss system of Plaintiff's church building was caused

---

[2] The Court notes that, at the motions hearing held on November 20, 2013, Plaintiff's counsel appeared to concede they would not be relying on a purported storm in October 2008 as the source for the damage at issue in this lawsuit.

by a wind event rather than progressive failure after a truss was cut and modified bracing was added to the adjacent trusses. He may also testify that the damage to the Plaintiff's building was similar to what he observed in other buildings in Macon damaged by the Mother's Day storm in 2008 and that this storm would have been sufficient to cause the damage to Plaintiff's roof. He may describe the methodology he used to reach these opinions. What he may not do, however, is testify that the purported October 2008 storm would have been sufficient to cause the damage to Plaintiff's church, since this would be nothing more than speculation on his part. Because this order also grants Southern Mutual's motion to strike Kornegay's supplemental expert report, the Court will note in passing that its analysis of Kornegay's methodology did not take the supplemental report into consideration.

### C.    Kornegay's Supplemental Expert Report

The supplemental expert report from Kornegay (Ex. C to Doc. 28-1) must also be addressed. Southern Mutual moves to strike this report as untimely, and Plaintiff has moved for leave to file it. There is no question that this report comes well after the deadline for filing supplemental expert reports. By order of this Court, expert reports could not be supplemented any later than January 21, 2013 absent the Court's leave. (Doc. 11, p. 6). Without specifically addressing the deadline for supplemental expert reports, the Court did extend the discovery

period through April 15, 2013, so that this date is the latest that expert reports could even arguably be supplemented absent the Court's leave. (Doc. 14). Kornegay was deposed on January 24, 2013. He did not supplement his report until July 5, 2013, and Plaintiff did not move for leave to file the report until July 29. Both of these events occurred well after Southern Mutual filed its Daubert motion to exclude Kornegay and moved for summary judgment, which happened on May 15 and May 30, 2013 respectively.

The Court finds that the untimeliness of Kornegay's supplemental report is neither harmless nor substantially justified. As Southern Mutual has been quick to note, its arguments for summary judgment and the exclusion of Kornegay's opinions were developed and briefed to the Court before Plaintiff introduced the supplemental report. If Plaintiff were granted leave to use the report at this point in the litigation, then Southern Mutual would request permission for a delay in any ruling on the summary judgment and Daubert motions until Kornegay could be re-deposed and the summary judgment and Daubert arguments could be re-briefed in light of the supplemental report. The Court agrees with Southern Mutual that such a delay would unnecessarily delay the proceedings in this case and increase litigation expenses, and agrees that if Southern Mutual is not given the opportunity to address the supplemental report then its arguments at this summary judgment stage would be prejudiced.

Plaintiff's arguments fail to convince the Court that the gross tardiness in submitting the supplemental expert report was substantially justified. First, Plaintiff contends it believed Kornegay's first two reports were sufficient to meet the disclosure requirements of the Federal Rules of Civil Procedure and <u>Daubert</u>'s demands for the admission of an expert opinion. Plaintiff was therefore surprised when Southern Mutual argued Kornegay's opinions must be excluded as based on insufficient testing and summary judgment must be entered dismissing Plaintiff's claims once the opinions were excluded, and Plaintiff now seeks leave to use the supplemental report to address the legal arguments it did not anticipate. This argument is meritless on its face. The Court will not allow Plaintiff to avoid the Court's scheduling deadlines because it is now second-guessing its earlier litigation decisions.

The Court is also unconvinced by Plaintiff's second argument for granting leave to admit Kornegay's supplemental report. Plaintiff asserts that during the deposition of Southern Mutual's corporate representative it learned for the first time that the insurance company had inspected the church building in 2005 prior to issuing an insurance policy for the building and had not observed any cracks in the sheetrock on the sanctuary's ceiling. In his supplemental report, Kornegay now opines that the absence of cracks in the sheetrock at the time of the inspection indicates the building's roof had not yet suffered the damage that

eventually caused its collapse, suggesting the severing of truss No. 6 could not have been responsible for the collapse. Although the deposition of Southern Mutual's corporate representative did not occur until June 19, 2013, subsequent to Kornegay's deposition and initial reports and only some few weeks before he supplemented his reports on July 5, Plaintiff and its counsel may not use the timing of the deposition to excuse their own failure to abide by the Court's deadlines for submitting expert reports. Plaintiff knew of the deadline facing Kornegay and was responsible for meeting it.

Therefore, Plaintiff's motion for leave to file Kornegay's supplemental report is denied and Southern Mutual's motion to strike the report is granted. Since the Court has granted Southern Mutual's motion to strike the report, its motion for leave to file a sur-reply on this issue is moot.

### III. Conclusion

Based on the foregoing, the Court grants Southern Mutual's <u>Daubert</u> Motion to Exclude the Testimony of Plaintiff's Expert Greg Barfield (Doc. 15); denies in part and grants in part its <u>Daubert</u> Motion to Exclude the Testimony of Plaintiff's Expert Garry Kornegay (Doc. 16); grants its Motion to Strike (Doc. 32); recognizes as moot its Motion for Leave to File Sur-reply (Doc. 45); and denies Plaintiff's Motion for Leave to File (Doc. 34).

    **SO ORDERED**, this the 18th day of December, 2013.

                                  ***s/ Hugh Lawson***
                                  **HUGH LAWSON, SENIOR JUDGE**

scr