**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **CORNERSTONE MISSIONARY BAPTIST CHURCH,**<br><br>　　Plaintiff,<br><br>v.<br><br>**SOUTHERN MUTUAL CHURCH INSURANCE COMPANY**,<br><br>　　Defendant. | Civil Action No. 5:12-CV-149 (HL) |

**ORDER**

Before the Court is Defendant Southern Mutual Church Insurance Company's Motion for Summary Judgment (Doc. 19). The motion is granted in part and denied in part.

## I. Factual Background

This case concerns the denial of an insurance claim for damage to the roof of a church building. Seen in the light most favorable to Plaintiff, the factual record shows that Plaintiff Corner Stone Missionary Baptist Church ("Plaintiff") owns a church building that is located at 2857 Mercer University Drive, Macon, Georgia. The building was constructed in 1986. (Defendant's Statement of Material Facts, Doc. 19-2, ¶¶1, 8; Plaintiff's Response to Defendant's Statement of Material Facts, Doc. 30, ¶¶1, 3; Southern Mutual's Special Multi-Peril Policy, Doc. 19-4, pp. 1-6). The roof of the church building was supported by a system of

pre-fabricated, 2 X 4 wooden scissor trusses, with each truss shaped in the form of a triangle and with the top point of the triangle being immediately beneath the roof's apex. A king post supported each truss by extending down from the top point of the triangle. As each arm of the truss ran away from the apex out towards the eaves of the roof, smaller posts provided additional support. Metal plates connected the top and bottom of each post to the truss. (Doc. 19-2, ¶9; Doc. 30, ¶1; Kornegay Deposition, Doc. 17-4, pp. 38-40; pictures taken by Dawkins, Doc. 42-6, pp. 75-84).

In December 2005, Defendant Southern Mutual Church Insurance Company ("Southern Mutual") issued an insurance policy providing coverage for Plaintiff's church building for three years, and Plaintiff eventually renewed the policy through the end of 2011. (Doc. 19-4, p. 6; Southern Mutual Corporate Deposition, Doc. 29-2, p. 8). Before Southern Mutual issued the policy, one of its experienced employees inspected the building in December 2005 for the purpose of noting any existing damage or construction defects. The inspection did not uncover any defects or damage in the building. (Id. at 10-15, 19-20). Southern Mutual's policy only covered certain types of damage to the church building. Damage caused by snow or a windstorm would be covered under the policy, but any loss resulting from "an act, error, or omission (negligent or not) relating to…the design, specification, construction, workmanship, installation, or

maintenance of the property" would not be covered. (Doc. 19-2, ¶¶1-6; Doc. 30, ¶2). Furthermore Southern Mutual declined to "cover loss caused by [Plaintiff's] neglect to use all reasonable means to save covered property at and after the time of loss." (Doc. 19-2, ¶7; Doc. 30, ¶2).

On Mother's Day, May 11, 2008, a powerful windstorm (hereinafter "Mother's Day storm") swept through the Macon area and damaged Plaintiff's church building as well as a number of other buildings in the vicinity. The storm formed into tornados at certain points along its path. Multiple buildings nearby Plaintiff suffered broken chord members and separated connecting plates in their roofs and truss systems. Immediately after the storm, members of Plaintiff's congregation noticed that shingles had been ripped away from various spots on the church's roof and that an annex building had been damaged. (Doc. 17-4, pp. 9-11, 61, 83-85; Sparks Deposition, Doc. 29-1, pp. 34-41). In October 2008, Plaintiff filed a claim for wind damage with Southern Mutual, and the insurance company sent its independent adjustor Charles Garrett ("Garrett") to inspect the buildings.[1] Garrett did not inspect inside the church building or examine the roof's structural components or support system. Southern Mutual did approve and pay

---

[1] In its pleadings, Plaintiff mentions the possibility of a second wind event in October 2008. (Doc. 28, p. 5 n. 2). However, since Plaintiff has failed to cite to any evidence of such an event, the Court must assume there was only damage from the Mother's Day storm.

this claim made in October 2008. (Garrett Deposition, Doc. 17-1, pp. 15-16, 20-23, 54-65).

Two years later, church members began observing other problems in their building. In late 2010 they saw cracks developing in the sheetrock of the sanctuary's ceiling and reported the issue to Southern Mutual in January 2011. Through Garrett Southern Mutual hired Garry Kornegay ("Kornegay"), a professional engineer, to inspect the church building. Unbeknownst to the insurance company, Plaintiff had also contacted Kornegay about investigating the damage to its building. Kornegay's inspection on January 13, 2011 found that nearly half of the wooden trusses in the church's roof had been damaged. Kornegay attributed the impaired trusses to wind damage and reported his findings to Garrett, who passed the information to Southern Mutual. (Id. at 26-33, 37; Doc. 17-4, pp. 32, 41-43, 51-54; Doc. 29-1, pp. 58-59; Doc. 29-2, pp. 78-79).

Upon learning of Kornegay's preliminary findings and without waiting for his written report, Southern Mutual decided to get a second opinion from Beech Engineering. (Doc. 29-2, pp. 84-90). Christian Dawkins ("Dawkins"), a licensed civil engineer employed by Beech, inspected the church building on January 17, 2011. He found that one truss ("No. 6") had been cut to make room for an electrical box and that scabbing or bracing had been added to the trusses on either side of No. 6. (Dawkins Deposition, Doc. 23-1, pp. 5-6, 17, 40-43).

Dawkins determined these three trusses were "very compromised," so that the load that should have been borne by them was forced onto the adjoining trusses. (Id. at 42). As he reported to Southern Mutual, the result was a gradual "unzipping" of the trusses as they buckled and separated from the connecting plates when a heavier load of the roof had to be borne by each new truss. (Id. at 43). Thus, based on Dawkins' report that a construction defect, not a windstorm, had damaged the trusses, Southern Mutual denied Plaintiff's claim. (Doc. 29-2, pp. 29, 92-93).

Unhappy with Southern Mutual's decision, Plaintiff hired its own civil engineer to provide an opinion. (Johnson's letter to Southern Mutual, Ex. 4 to Southern Mutual Deposition, Doc. 29-3, pp. 28-30; Moye Deposition, Doc. 17-5, pp. 15-22, 100-01, 119-21). Greg Barfield ("Barfield") inspected the church building in March 2011 and sharply disagreed with Dawkins' conclusion on the cause of the damage to the roof's support structure. However, in a separate order, the Court has found Barfield to be unqualified to render expert opinions in this case, and his opinions will not be considered in the Court's summary judgment analysis.

Plaintiff also showed Dawkins' report to Kornegay and asked him to respond. When Kornegay had inspected the church building, he had not noticed that truss No. 6 had been cut to make room for the electrical box. However, he

assured Plaintiff that the damage he had seen was not consistent with Dawkins' conclusion. Even if a truss had been cut as Dawkins described, the adjoining trusses should have been able to bear the additional load. The damage to over half of the roof's trusses which Kornegay had found could have been caused by a windstorm but not from cutting one truss. (Doc. 17-4, pp. 49, 56-61, 80-85).

Following Plaintiff's challenge to the denial of its insurance claim, Southern Mutual hired yet another civil engineer, Tom Zgraggen ("Zgraggen"), to inspect Plaintiff's building. (Doc. 29-2, pp. 98-101). After investigating the damage to Plaintiff's church building, Zgraggen reported back on March 29, 2011 and largely agreed with Dawkins' findings. Zgraggen concluded that a windstorm did not cause the damage he discovered. He rather attributed the broken trusses to progressive failure resulting from the defective manufacturing of some of the trusses, improper installation of the trusses during the original construction of the church building, and the severing of truss No. 6. (Report of Tom Zgraggen, Doc. 19-12, pp. 1-6).

After Southern Mutual reiterated its denial of the insurance claim and the roof to the church building completely collapsed in July 2011, Plaintiff filed suit in state court alleging breach of contract and bad faith. (Complaint, Ex. C to Notice of Removal, Doc. 1-4). Southern Mutual removed the matter to this Court on the

basis of diversity of jurisdiction. (Notice of Removal, Doc. 1). It now moves for summary judgment on Plaintiff's claims of breach of contract and bad faith.

## II.     Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and…the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When considering a motion for summary judgment, the court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The court may not, however, make credibility determinations or weigh the evidence. Id. at 255; *see also* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than conclusory allegations. *See* Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). In sum, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III.   Legal Analysis

The Plaintiff's claims of breach of contract and bad faith must be reviewed under Georgia law because the claims are based on rights afforded by state law and this matter is before the Court solely on the basis of diversity of jurisdiction. *See* Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1938); Lopez v. Target Corp., 676 F.3d 1230, 1235-36 (11th Cir. 2012).

#### A.   Breach of Contract Claim

Southern Mutual's motion for summary judgment on the breach of contract claim must be denied because genuine issues of material fact concerning the

interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than conclusory allegations. *See* Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). In sum, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III.   Legal Analysis

The Plaintiff's claims of breach of contract and bad faith must be reviewed under Georgia law because the claims are based on rights afforded by state law and this matter is before the Court solely on the basis of diversity of jurisdiction. *See* Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1938); Lopez v. Target Corp., 676 F.3d 1230, 1235-36 (11th Cir. 2012).

#### A.   Breach of Contract Claim

Southern Mutual's motion for summary judgment on the breach of contract claim must be denied because genuine issues of material fact concerning the

proximate cause of the damage to Plaintiff's church roof and truss system remain. Southern Mutual argues that, as a matter of law, it could not be guilty of breaching the insurance policy with Plaintiff in denying the claim for the damage to the church roof since the damage was not caused by a peril covered under the policy. Plaintiff responds that either wind or snow, both of which were covered under the insurance policy, caused the damage and so Southern Mutual did breach the policy. Causation therefore becomes the central issue in this dispute.

Because the question of causation is addressed by state law, this Court must apply Georgia law to the breach of contract claim. Tisdale v. United States, 62 F.3d 1367, 1373 (11th Cir. 1995). "Causation issues should normally be addressed by the finder of fact under Georgia law." Id. "Ordinarily, questions of negligence and diligence, cause and proximate cause are questions solely for consideration by the jury, and such questions should not be resolved as a matter of law except in plain and palpable cases." Williams v. Nico Indus., Inc., 157 Ga. App. 814, 815, 278 S.E.2d 677 (1981) (rev'd on other grounds by Malvarez v. Ga. Power Co., 250 Ga. 568, 300 S.E.2d 145 (1983)); *see also* Saul Klenberg Co. v. Mrozinski, 78 Ga. App. 59(2), 50 S.E.2d 247 (1948) (noting that proximate cause should be determined by the jury "except in clear and unmistakable cases"). Where proximate cause "depends upon a state of facts from which different minds might reasonably draw different inferences, it is for a jury to

determine the proximate cause." Walker v. Daniels, 200 Ga. App. 150, 156, 407 S.E.2d 70 (1991) (internal quotation and citation omitted).

There is a genuine issue of material fact as to whether the damage to Plaintiff's roof and truss system was proximately caused by a windstorm. Plaintiff offers the testimony from one of its church members, Melba Sparks, that the roof of the church building suffered at least superficial damage in the Mother's Day storm in 2008. (Doc. 29-1, pp. 34-41). Garry Kornegay, Plaintiff's engineering expert, has also testified that the damage to the roof and truss system was "consistent with that expected from a windstorm." (Doc. 17-4, p. 43). He inspected multiple buildings that suffered roof damage in the Mother's Day storm, including buildings in the vicinity of Plaintiff's church that also had wooden trusses, and has concluded from a comparison of the damaged roofs that the pattern of failure in Plaintiff's roof was similar to what he observed in buildings after the Mother's Day storm. The overloading of a truss system from a windstorm would not necessarily cause an immediate failure of the trusses, according to Kornegay, and might not be evident until years after the wind event. (Id. at 65, 83-85).

Kornegay also explicitly rejects the opinion by Southern Mutual's experts that the severing of truss No. 6 and the modified bracing added to the adjacent trusses was responsible for the failure of the truss system and the roof's

collapse. Based on his observation of the materials attached to the trusses and his knowledge gleaned from experience for how much these materials would have weighed, Kornegay calculated that the truss system, even with the modifications, was more than strong enough to support the live and dead loads. Absent a windstorm, the truss system would not have failed, and the roof would not have collapsed. Kornegay denies that the cutting of one truss could have led to half of the trusses being compromised, which is what he observed in Plaintiff's attic. (Id. at 40-46, 60-61). The sporadic nature of the damage to the truss system, with sound trusses being interspersed with broken ones, also conflicts with Southern Mutual's argument that cutting truss No. 6 led to a progressive failure of the trusses as each new truss had to support additional weight. (Williams Deposition, Doc. 17-3, p. 25, 40-41, 72-73; Doc. 17-5, p. 20, 25-26).

Nor may summary judgment be granted based on Southern Mutual's alternate arguments for why the damage to Plaintiff's building is not covered by the insurance policy. The company maintains that the trusses were improperly installed when the church was first constructed, causing them to be out of plumb, weaken over time, and cause the walls on which they rest to bow out. (Doc. 19-12, pp. 2-5). Kornegay testified that he looked for evidence of the trusses being out of plumb and did not notice anything, but that even if they were out of plumb, this could result from the overloading they experienced in a windstorm. (Doc. 17-

4, pp. 70-72). Additionally, Southern Mutual's own expert Christian Dawkins inspected the building's walls to see if they were out of plumb and determined they were not. (Doc. 23-1, 25-28). This conflicting evidence prevents the Court from determining, as a matter of law, that the damage to the roof was the result of negligent construction, installation, or improvement, origins that would be excluded under the policy.

Nor does the factual record allow the Court to grant summary judgment on the basis of Southern Mutual's remaining argument, that Plaintiff is guilty of neglect in failing to repair the roof as soon as Kornegay discovered the damage and thus may not recover under the policy. This argument is meritless on its face. As Plaintiff readily observes, the purpose of the insurance policy was to cover the cost of making repairs after an event such as a windstorm, but since Southern Mutual denied the claim within days of Kornegay's inspection, the church had no money with which to repair the roof and prevent it from collapsing. A jury could certainly decide that Plaintiff was not unreasonably neglectful.

Plaintiff is permitted to proceed to trial on its breach of contract claim and let a jury decide whether Southern Mutual is liable for failing to pay the claim submitted under the insurance policy. In its current position, the dispute in this case rests on conflicting expert testimony, but since only a jury as the trier of fact may make credibility determinations, summary judgment on the breach of

contract claim must be denied. Reeves, 530 U.S. at 150 ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

### B. Bad Faith Claim

Southern Mutual has also moved for summary judgment on Plaintiff's claim of bad faith, and its motion on this issue is granted. Georgia law provides for the imposition of additional damages and attorney's fees where an insurance company denies in bad faith an insured's timely claim for a loss covered by the insurance policy. O.C.G.A. § 33-4-6. Because the damages available under O.C.G.A. § 33-4-6 "are in the nature of a penalty, the statute is strictly construed and the right to such recovery must be clearly shown." Fla. Int'l Indem. Co. v. Osgood, 233 Ga. App. 111, 115-16, 503 S.E.2d 371 (1998) (citing Interstate Life & Accident Ins. Co. v. Williamson, 220 Ga. 323, 325, 138 S.E.2d 668 (1964)). To prevail on a claim brought under O.C.G.A. § 33-4-6 the insured bears the burden of proving the denial was made in bad faith. Rice v. State Farm Fire & Cas. Co., 208 Ga. App. 168, 169, 430 S.E.2d 75 (1993) (citing Mass. Bay Ins. Co. v. Hall, 196 Ga. App. 349, 355, 395 S.E.2d 851 (1990)). A bad faith claim will not stand "where the insurance company had any reasonable ground to contest the claim and where there is a disputed question of fact." Id. "[T]he very fact that certain factual issues regarding the merits of a claim are in genuine conflict…causes

there to be no conflict, as a matter of law, whether an insurance company had reasonable grounds to contest a particular claim." Id. Thus, "where the insurer has reasonable grounds to contest the claim or the question of liability is close," the insurer is entitled to summary judgment. Osgood, 233 Ga. App. at 116, 503 S.E.2d 371 (citations omitted).

Construing the facts most favorably to Plaintiff shows that Southern Mutual's denial of the church's claim for the damage to its roof and truss system was not done in bad faith. While Southern Mutual's motion for summary judgment on bad faith could not be granted if it were based on nothing more than an expert witness's opinion, *see* O.C.G.A. § 33-4-6(a), multiple facts underscore the reasonableness of Southern Mutual's decision to deny Plaintiff's claim. First, although Plaintiff claims the damage to its church was caused by a windstorm or snow, the only clear evidence for such a weather event relates to the Mother's Day storm from 2008, which occurred more than two years before Plaintiff filed the claim at issue here. Furthermore, the claim Plaintiff did make in October 2008 for damage to the church's roof, regardless of whether the damage was from the Mother's Day storm or some other event, evidently described no more than ten shingles having been ripped away. (Doc. 29-1, p. 39; Doc. 17-1, p. 20). Southern Mutual might reasonably doubt whether such minimal damage to the roof's exterior would be consistent with the extensive damage to the roof's support

system, particularly when two engineers said it was not. And it is undisputed that Plaintiff, or someone working on behalf of the church, severed truss No. 6 to make room for an electrical box and added modified bracing to the adjacent two trusses. Even though there may be a factual question as to whether these modifications proximately caused the collapse of the roof, such a factual dispute on the merits of the claim necessarily precludes Plaintiff from proceeding on its bad faith claim, as the Court of Appeals of Georgia noted in Rice.

While the opinions of Southern Mutual's experts would not alone be sufficient grounds to grant summary judgment on the bad faith claim, the insurer was not acting in bad faith by relying on their opinions. Southern Mutual had reasonable grounds for mistrusting Kornegay's findings and hiring a second engineering firm to inspect the church. The fact that Kornegay had agreed to look at the church building for Plaintiff even before being hired by Southern Mutual might cause his objectivity to be called into question. And as Southern Mutual's corporate representative related at his deposition, after speaking with Charles Garrett, the company believed that Kornegay's inspection had been hasty, sloppy, and incomplete. (Doc. 29-2, pp. 79-82, 84-85). After Plaintiff challenged the findings of the second firm and hired its own engineer, Southern Mutual searched for the "best" engineer available, "someone qualified to testify on trusses, rafters, [etc.]," and retained Tom Zgraggen of Aries Engineering. (Id. at

95-96). Neither of the civil engineers Southern Mutual hired after Kornegay attributed the damage to Plaintiff's church building to a covered peril such as snow or a windstorm.

In sum, the Court finds that Southern Mutual did not act in bad faith by denying Plaintiff's insurance claim for the damage to its roof and truss system. Given the facts before it, Southern Mutual reasonably decided the claim was not covered under the policy. Southern Mutual's motion for summary judgment on the bad faith claim and request for attorney's fees is granted.

## IV.     Conclusion

Based on the foregoing, Southern Mutual's Motion for Summary Judgment (Doc. 19) is granted in part and denied in part. Plaintiff's bad faith claim and request for attorney's fees are dismissed. Plaintiff may move forward with its claim for breach of contract, and this case will be set for trial.


**SO ORDERED**, this the 18th day of December, 2013.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

scr